UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-63157-CIV-ALTMAN

**NOLBERTO LEMUS**,

    *Petitioner*,

*v.*

**MARK INCH**,

    *Respondent.*

_____/

**ORDER**

    The Petitioner, Nolberto Lemus, filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 ("Petition") [ECF No. 1], challenging his state-court conviction and sentence.[1] After the Court entered an Order to Show Cause [ECF No. 6], the Respondent filed its Response [ECF No. 13], and the Petitioner submitted a Reply [ECF No. 18]. For the reasons set out below, the Petition is **DENIED**.

**THE FACTS**

    On September 3, 2015, a jury in the State Circuit Court of Broward County, Florida, found the Petitioner guilty of second-degree murder with a deadly weapon. *See* Jury Verdict [ECF No. 14-1] at 9. The trial court entered judgment against the Petitioner, *see* Judgment [ECF No. 14-1] at 11–12, and sentenced him to 300 months in prison, *see* Sentencing Order [ECF No. 14-1] at 19–21.

    The Petitioner appealed. *See* Notice of Appeal [ECF No. 14-1] at 23–24. As relevant here, the Petitioner argued that the trial court had erred by denying his motion for a new trial "because the evidence of intent was insufficient to prove second degree murder." Initial Brief on Direct Appeal

---

[1] The Petitioner added a Memorandum of Law ("Memorandum") [ECF No. 3].

1

[ECF No. 14-1] at 28, 61–64. In saying so, the Petitioner didn't cite (or mention) either the U.S. Constitution or any applicable federal case or statute—not in his initial brief, *id.* at 61–64, or anywhere else, *see* Reply Brief on Direct Appeal [ECF No. 14-1] at 139–40.[2] The Fourth DCA summarily affirmed the Petitioner's conviction and sentence. *See Lemus v. State*, 228 So. 3d 571 (Fla. 4th DCA 2017).

The Petitioner then filed a state habeas petition in the Fourth DCA, *see* State Habeas Petition [ECF No. 14-1] at 147–58, which that court summarily denied, *see* Order Denying State Habeas Petition [ECF No. 14-1] at 170. The Petitioner also filed a motion for postconviction relief under FLA. R. CRIM. P. 3.850 in the state trial court. *See* Motion for Postconviction Relief ("Rule 3.850 Motion") [ECF No. 14-1] at 172–88. In that Rule 3.850 Motion, the Petitioner claimed that his trial counsel had been ineffective for failing to interview (or call to the witness stand) Ms. Ziola Rios—the Petitioner's "common law wife"—who (the Petitioner alleged) would have "corroborated [the Petitioner's] version of events." *Id.* at 179. In its response, the State argued that the Petitioner had failed to establish prejudice. As it explained:

> Defendant, in his trial testimony, stated he was outside of his residence watching television on his porch at the time the victim arrived the second time. Defendant did say his wife was at home at the time the victim arrived, but there is no testimony from him, or anyone, to establish that she was outside with him at that time or that she came out of the residence at any point in time during the altercation. In fact, the neighbor, Ms. Garcia-Martinez, testified she was the only person who witnessed the incident when Defendant hit the victim with an object.

State's Response to Rule 3.850 Motion ("State's Resp.") [ECF No. 14-1] at 224 (cleaned up).

The trial court denied the Petitioner's Rule 3.850 Motion. *See* Order Denying Rule 3.850 Motion ("Order Denying Motion") [ECF No. 14-2] at 157–61. In doing so, it "adopt[ed] the state's response" and, only in the alternative, supplied its own reasoning for the decision. *Id.* at 158. In

---

[2] He relied instead on Florida cases addressing the "depraved mind" element of second-degree murder. *See* Initial Brief on Direct Appeal at 61–64 (citing Florida cases).

outlining this alternative holding, the court found "no evidence that [Ms.] Rios even witnessed the events in question" and pointed out that "Ms. Garcia-Martinez testified that she was the only person who witnessed the Defendant striking the victim with a baseball bat." *Id.* at 160.

The Petitioner appealed the Order Denying his Rule 3.850 Motion. *See* 2019 Notice of Appeal [ECF No. 14-2] at 163. In that appeal, the Petitioner chastised the postconviction trial court for overlooking the Rule 3.850 Motion's verified assertion that Ms. Rios "was inside his home and heard and observed from inside the home [the altercation]." Initial Brief on Rule 3.850 Motion ("Postconviction Brief") [ECF No. 14-2] at 189. The Fourth DCA summarily affirmed. *See Lemus v. State*, 277 So. 3d 1037 (Fla. 4th DCA 2019).

On December 26, 2019, the Petitioner filed this Petition, which asserts two claims: *first*, that trial counsel was ineffective for failing to investigate, interview, or call Ms. Rios to the witness stand; and, *second*, that the trial court erred by denying the Petitioner's motion for a new trial. *See generally* Petition; Memorandum. After the State offered its Response, the Petitioner (finally) submitted a statement from Ms. Rios herself. *See* Reply, Ex. A.

## TIMELINESS

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

3

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)–(D).

Of course, the state is always free to *waive* its limitations defense. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) ("[T]he State has never indicated a desire to waive the limitations bar."). In our case, the Respondent has conceded the Petition's timeliness. *See* Response at 18 ("Based on the procedural history outlined *supra*, it appears that Petitioner's petition is timely filed."). And the Court sees no reason to scrutinize this concession. *See Day v. McDonough*, 547 U.S. 198, 209–10 (2006) ("[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition [even if the State erroneously concedes that a petition is untimely] . . . . Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions.").

## EXHAUSTION

Habeas petitioners must also exhaust their claims before presenting them in federal court. *See* § 2254(b)–(c); *see also Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) ("Generally, in order to bring a § 2254 habeas corpus petition in federal court, a petitioner must exhaust all state court remedies."). Again, however, "'[s]tates can waive procedural bar defenses in federal habeas proceedings,' including exhaustion." *Vazquez*, 827 F.3d at 966 (quoting *Hills v. Washington*, 441 F.3d 1374, 1376 (11th Cir. 2006)). At the same time, "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, *expressly* waive[d] the requirement." § 2254(b)(3) (emphasis added); *accord McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005).

Here, the Respondent has *expressly* waived any exhaustion defenses it might've had. *See* Response at 20 ("It appears Petitioner properly exhausted his single claim of trial court error . . . . It

4

also appears that Petitioner properly exhausted his claim of ineffective assistance of trial counsel[.]"). And, as with timelines, we see no reason to question this waiver.

### STANDARD OF REVIEW

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing § 2254(d)–(e)).

To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't include reasons for the denial, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

"Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United State Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Harrington*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting § 2254(e)(1)).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

## THE LAW

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88).

Starting with the first ("deficient performance") prong, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* Specifically, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. In assessing performance, courts must consider "all the circumstances." *Id.* But "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (cleaned up). For this reason, "[s]trategic choices made after thorough investigation of the law and facts relevant to plausible options are *virtually unchallengeable*." *Id.* at 690–91 (emphasis added). This is because "the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013). Courts should remember, in other words, that "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The Court's review of counsel's performance, therefore, should focus "not

7

[on] what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000); *see also Burger v. Kemp*, 483 U.S. 776 (1987) (same). Finally, conclusory allegations of ineffectiveness are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012) ("Taking these vague and conclusory allegations together, the Alabama Court of Criminal Appeals determined that Boyd's claim fell far short, on its face, of establishing either *Strickland*'s performance or prejudice prong.").

Turning to *Strickland*'s second ("prejudice") prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Note, however, that a court need not address both *Strickland* prongs if the petitioner fails to carry his burden as to one of those prongs. *See id.* at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

**ANALYSIS**

### I.    GROUND ONE (INEFFECTIVE ASSISTANCE OF COUNSEL)

In Ground One, the Petitioner argues that his trial counsel was ineffective for failing to investigate, interview, or call as a witness his common-law wife, Ms. Rios, who—according to the Petitioner—would have testified that she saw the victim "carry a large board and swing it in a menacing

manner" and "that she was in fear for her life and her husband's [life] based upon [the victim's] unprovoked attack." Petition at 5.

The state trial court denied this claim because the Petitioner had adduced no evidence that Ms. Rios had witnessed the events. *See* Order Denying Motion at 160. To the contrary, as the court noted, Ms. Garcia-Martinez had testified that *she* was the only person who saw what happened. *See id.* In his postconviction *appeal*, the Petitioner argued that the trial court's finding didn't "comport with the . . . facts" because *he* had submitted a sworn motion, in which *he'd* alleged that *his wife* had observed the altercation, that *she* supported his version of the events, and that *she* had been willing to testify on his behalf. *See* Postconviction Brief at 189. According to the Petitioner's sworn motion, Ms. Rios "stayed, in fear, inside the home but did observe [the decedent] attack [the Petitioner]" because the fight occurred "a few feet" from "the entrance of [their] home." *Id.* at 188–90. Beyond *his own* allegations about what *his wife* had seen, however, the Petitioner didn't cite any other evidence. *See generally id.*; *see also* Rule 3.850 Motion at 179–81.

As we've said, since the Fourth DCA summarily affirmed the trial court's denial of the Rule 3.850 Motion, *see Lemus*, 277 So. 3d at 1037, we must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning," *Wilson*, 138 S. Ct. at 1192. In our case, that "last related state-court decision" was the trial court's Order Denying the Petitioner's Rule 3.850 Motion—which, for three reasons, wasn't erroneous.

*First*, the Petitioner never submitted any statement from *Ms. Rios* to the state courts. Instead, he submitted his own self-serving motion, in which *he* described what *she* had seen and insisted that *she* would have been willing to testify at his trial. *See* Rule 3.850 Motion at 179–80 ("Miss Rios would have testified that she had seen [redacted] initiate the incident my [sic] making verbal and physical threats including striking [the Petitioner] . . . . There is no doubt that this witness would not only have

9

testified at trial but also at any immunity hearing."). He also attached a transcript of his post-arrest interview with the detectives, in which he had said both that his "wife was there" and that he "was with [his] wife outside" when the victim first arrived "the second time." *Id.* at 190. Neither piece of "evidence" suffices. Starting with the police interview, the Petitioner never told the detectives *anything* about what his wife had seen or whether she was willing to testify. And the Petitioner's self-serving motion, in which he described what *his wife* had observed and what *she* would have said, is precisely the kind of speculation that, in this Circuit, fails to satisfy the *Strickland* test. *See McKiver v. Sec'y, Fla. Dep't of Corr.*, No. 18-14857, 2021 WL 1136536, at *5 (11th Cir. Mar. 25, 2021) ("[A] petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." (citing *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006))). The rule could hardly be otherwise. Any petitioner, after all, can create of whole cloth an endless stream of hypothetical witnesses whose proffered testimonies would plug the gaps in the petitioner's story and undermine (partially or dispositively) the jury's verdict. Since the convicted petitioner has powerful incentives to invent these witnesses, our system justifiably requires the *witnesses themselves* to come forward and swear to their version of the facts.

*Second*, although the Petitioner (in Reply here) has *finally* submitted a statement from Ms. Rios herself—in which Ms. Rios says that she "witnessed the events," Reply, Ex. A—our "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). In other words, "evidence later introduced in federal court is irrelevant to § 2254(d)(1) review." *Id.* at 184. Trying to parry this commonsense rule, the Petitioner now claims that he *did* submit Ms. Rios's statement to the state courts. *See* Reply at 3 ("[T]hrough some mistake or inadvertence, Respondent has overlooked the Affidavit of Ms. Rios which was filed with Petitioner's Rule 3.850 Motion."). This isn't true. The Court has thoroughly

reviewed the Broward County Criminal Docket in the Petitioner's case,[3] along with the Respondent's exhibits, *see generally* Respondent's Exhibits [ECF No. 14-1]; [ECF No. 14-2], and finds that the Petitioner neither submitted any such statement nor mentioned it in any of his briefing, *see* Rule 3.850 Motion at 179–81; Postconviction Brief at 188–90. The Petitioner, in fact, failed to reference Ms. Rios's statement *even after* the postconviction trial court determined that the Petitioner had submitted "no evidence that Mrs. Rios even witnessed the events in question." Order Denying Motion at 160. If—as the Petitioner now claims—he *had* submitted Ms. Rios's statement to the trial court, then (presumably) he would have noted the trial court's failure to review that critical piece of evidence in his subsequent postconviction brief. But no mention of Ms. Rios's statement appears anywhere in that brief, *see generally* Postconviction Brief—a sure indication that Ms. Rios had filed no such statement with the trial court. Nor, by the way, is there any reference to Ms. Rios's statement in this Petition (or its accompanying Memorandum). *See generally* Petition; Memorandum. That, again, is because Ms. Rios's statement didn't appear (even in our case) until the Petitioner's Reply, *see* Reply, Ex. A.— obviously too late to be of any use to anyone, *see, e.g.*, *A&E Adventures LLC v. Intercard, Inc.*, 2021 WL 1165244, at *6 (S.D. Fla. Mar. 26, 2021) (Altman, J.) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived." (quoting *In re Egidi*, 571

---

[3] Federal Rule of Evidence 201 permits a federal court to take judicial notice of the state-court records of an inmate's postconviction proceedings because, generally, those records "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Paez*, 947 F.3d at 652 (quoting FED. R. EVID. 201(b)). "Rule 201 does not require courts to warn parties before taking judicial notice of some fact, but, upon the party's request, it does require an opportunity to be heard after the court takes notice." *Id.* "The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in [the] district court." *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1205 (11th Cir. 2004) (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997)). With this framework in mind, the Court now instructs the Clerk to **ADD** to this record a copy of the Broward County Criminal Docket in the Petitioner's case (and a copy of his Rule 3.850 Motion from that Docket), which is available at https://www.browardclerk.org/web2. If the Petitioner objects to the Court's decision to take judicial notice, he may note that objection in a motion for reconsideration. Any such objection must be filed within **28 days of this Order** and will be reviewed *de novo*.

F.3d 1156, 1163 (11th Cir. 2009))); *cf.* Rule 7(c) to the Rules Governing Section 2254 Cases in the United States District Courts ("The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.").[4] Since the state courts had no reason to know of Ms. Rios's statement, the Petitioner cannot show that the state courts' denial of his claim rested on an unreasonable determination of the facts or was otherwise contrary to, or an unreasonable application of, clearly established federal law.[5]

*Third*, even on the merits, the statement is irrelevant anyway, because it doesn't answer the central question the Petitioner has presented here—whether Ms. Rios would have testified at trial that the decedent had first attacked the Petitioner. *See generally* Reply, Ex. A. The Petitioner thus can neither blame counsel for failing to call her nor establish that the absence of her trial testimony prejudiced him in any meaningful way.

We conclude by highlighting the Eleventh Circuit's recent decision in *McKiver*, which is on all-fours with our case. There, the petitioner stole a bottle of oxycodone pills from his neighbor and, in defending himself against a trafficking charge, told the police that he'd consumed the pills himself. *See McKiver*, 2021 WL 1136536, at *2. The police didn't buy his story, so he proceeded to trial, where a

---

[4] Of course, as we've explained, even if the Petitioner *had* submitted Ms. Rios's statement in his Petition—that is, even if he hadn't waited to surprise the Respondent with it in Reply—the statement would remain inapposite because "evidence later introduced in federal court is irrelevant to § 2254(d)(1) review." *Cullen*, 563 U.S. at 184.

[5] Even if the newly submitted statement were relevant to the § 2254 analysis, it would still prove unhelpful to the Petitioner. Ms. Rios (it's true) had her letter notarized, *see* Reply, Ex. A (showing that "the person described in and who signed the Foregoing, and acknowledged to me that [s]he executed the same freely and voluntarily for the uses and Purposes therein expressed . . . ."), but she neither swore that its contents were true nor offered them "under penalty of perjury," *see generally id.* We therefore don't need to accept the statement as evidence. *See Williams v. Dunn*, 2016 WL 11266661, at *11 n.3 (N.D. Ala. Nov. 7, 2016), *report and recommendation adopted*, 2017 WL 474563 (N.D. Ala. Feb. 6, 2017) (explaining that, in considering a § 2254 petition, the court "may disregard . . . statements" that are (1) not offered in sworn affidavits or (2) not submitted "under penalty of perjury").

jury convicted him of drug trafficking,[6] after which the court sentenced him to a mandatory term of 25 years in prison. *See id.* at *2. The petitioner filed a state postconviction motion, arguing that his trial counsel had been ineffective for failing to call four witnesses—each of whom, the petitioner insisted, would have testified that the neighbor had sold some of the pills *before* the theft. *Id.* That testimony, of course, would have called into question the state's theory about the number of pills the petitioner had possessed—and thus undermined the mandatory minimum sentence he'd received. *Id.*

At an evidentiary hearing in state court, trial counsel testified that (1) the petitioner had given him the names of two potential witnesses, neither of whom was among the four described in the petition; (2) the petitioner had admitted to him that the bottle was full when he stole it; and (3) the petitioner had never mentioned that any of the witnesses had seen the neighbor sell some of the pills. *Id.* The petitioner, by contrast, testified that he'd told his lawyer about *seven* potential witnesses, four of whom (he maintained) would have testified about the neighbor selling some of the pills. *Id.* at *3. The petitioner also swore that those four witnesses had been available and willing to testify at trial— and that, had they testified, they would've admitted to buying some of the neighbor's pills themselves. *Id.* Indeed, the petitioner added, one of those witnesses would've testified about the precise number of pills in the stolen bottle—a number that (unsurprisingly) corresponded to *less* than 28 grams. *Id.* After hearing the testimony, the postconviction court granted the petition, but the appellate court reversed, concluding that the petitioner's claim wasn't supported by "competent substantial evidence." *Id.*

In his ensuing federal habeas petition, the petitioner restated his view that his lawyer had been ineffective for failing to investigate and call the four witnesses. *Id.* The federal district court denied his petition *on the merits*, and the Eleventh Circuit affirmed. *Id.* at *10. In doing so, the court acknowledged

---

[6] At the time, Florida law characterized the possession of 28 grams (or more) of oxycodone as drug trafficking.

that fair-minded jurists could disagree about the merits of the petitioner's position. *Id.* at *5. But, the court went on, the burden on a habeas petitioner in a case like this one—where the petitioner alleges that counsel was ineffective for failing to call a witness at trial—is particularly heavy "because often allegations of what a witness would have testified to are largely speculative." *Id.* (quoting *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006)). Thus, "a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." *Id.*

Note, too, that, in his federal habeas petition, McKiver *had* (unlike our Petitioner) submitted sworn affidavits from each of his four witnesses. *Id.* Nevertheless, the Eleventh Circuit refused to consider those affidavits because federal courts "cannot consider evidence that was not presented to the state courts." *Id.*; *see also Pinholster*, 563 U.S. at 180–81 (explaining that, under AEDPA, federal "review is limited to the record that was before the state court that adjudicated the claim on the merits"). As in *Mckiver*, our Petitioner didn't give the state courts any evidence—other than his own testimony—about what Ms. Rios saw and whether she would have testified. And that's, of course, sufficient to dispose of this case.

But the Petitioner's case is also, in salient ways, weaker than McKiver's was. So, for instance, whereas McKiver had submitted his witnesses' affidavits *together* with his federal habeas petition, the Petitioner didn't include a statement from Ms. Rios until his Reply; whereas McKiver had submitted *sworn* affidavits from each of his four witnesses, Ms. Rios's statement isn't sworn and doesn't qualify as a valid affidavit; and whereas the four affidavits McKiver adduced launched a direct assault on the number of pills in question—an essential element of the offense—Ms. Rios's unsworn statement proves nothing: She never says that she had a clear view of the incident and never challenges the State's basic theory of the facts.

As this summation should make plain, Ground One of the Petition is **DENIED**.

## II.    GROUND TWO (NEW TRIAL)

In Ground Two, the Petitioner contends that his "Counsel [erred by] Denying [his] Motion for a New Trial." Petition at 7. In that motion, the Petitioner's lawyer argued that the State had failed to disprove his theory of self-defense and that it hadn't adequately established his *mens rea*. *See* Initial Brief on Direct Appeal at 26. The trial court (not counsel) denied this motion for a new trial, *id.*, and the Fourth DCA summarily affirmed, *see Lemus*, 228 So. 3d at 571. Now, the Petitioner claims that he "had worked on [the victim's] vehicle many times . . . [and that] there [was] no evidence that the two men had any problems or issues in their previous encounters." Petition at 7. In other words, the Petitioner insists, "there was no evidence to show that [his] actions, which he contend[s] were in self-defense, were [the] product of a depraved mind, an element of Second-degree Murder." *Id.*

But this isn't an ineffective-assistance-of-counsel claim at all. Instead, it is (charitably construed) merely a claim that *the trial court* erred in denying the Petitioner's motion for a new trial. And claims of *court* error, for better or worse, aren't cognizable on habeas review. Congress, after all, has provided that "a district court shall entertain an application for a writ of habeas corpus" filed by "a person in custody pursuant to the judgment of a State court *only on the ground* that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a) (emphasis added). And "a state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Holsey v. Thompson*, 462 F. App'x 915, 917 (11th Cir. 2012) (cleaned up).

When he advanced this claim in state court, the Petitioner never mentioned any federal constitutional or statutory legal principles—let alone any violation of the Constitution or laws of the United States. *See generally* Initial Brief on Direct Appeal; Reply Brief on Direct Appeal. And nowhere in his Petition or Memorandum in this case does he include even a cursory invocation of federal constitutional (or statutory) law. *See generally* Petition; Memorandum; *cf. Borden v. Allen*, 646 F.3d 785,

15

810 (11th Cir. 2011) (explaining that a "heightened pleading requirement" applies on habeas review).[7] At best, then, the Petitioner has identified an error of state law that isn't cognizable here. *See Holsey*, 462 F. App'x at 917 ("[A] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief[.]"). Ground Two is therefore **DENIED**.

## EVIDENTIARY HEARING

"[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen,* 563 U.S. at 183 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Because the record before the state court precludes relief, the Court need not hold an evidentiary hearing here. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." (cleaned up)); *see also Landrigan*, 550 U.S. at 474 ("[I]f the [state court] record refutes the applicant's factual allegations *or otherwise precludes habeas relief*, a district court is not required to hold an evidentiary hearing." (emphasis added)). The Petitioner's request for an evidentiary hearing, *see* Memorandum at 3, is therefore **DENIED**.

## CERTIFICATE OF APPEALABILITY

To pursue an appeal, a petitioner must first obtain a Certificate of Appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal

---

[7] Of course, "[a] *pro se* pleading is held to a less stringent standard than a pleading drafted by an attorney and is liberally construed." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017); *see also Torres v. Miami-Dade Cty.*, 734 F. App'x 688, 691 (11th Cir. 2018) ("Liberal construction, in more concrete terms, means that federal courts must sometimes look beyond the labels used in a *pro se* party's complaint and focus on the content and substance of the allegations."). That leniency, however, "does not give courts license to serve as de facto counsel or to rewrite an otherwise deficient pleading in order to sustain an action." *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 716 n.3 (11th Cir. 2011); *Golfin v. Sec'y, Fla. Dep't of Corr.*, 276 F. App'x 908, 908 (11th Cir. 2008) ("[W]e will not act as *de facto* counsel for a *pro se* litigant."). Since the Petitioner never framed this error in either constitutional or statutory terms, this Court has no authority to convert the claim into something it isn't—and has never been.

may not be taken to the court of appeals[.]"). But a COA should issue only when a petitioner makes "a substantial showing of the denial of a constitutional right." § 2253(c)(2). To make that showing, a petitioner must establish that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Because (in this Court's view) reasonable jurists wouldn't find the Court's disposition debatable or wrong, the Court won't grant him a COA in the circumstances presented here.[8]

\*\*\*

After careful review, the Court hereby **ORDERS AND ADJUDGES** that the Petition [ECF No. 1] is **DENIED**, any request for a COA is **DENIED**, the Petitioner's request for an evidentiary hearing is **DENIED**, and all deadlines are **TERMINATED**. The Clerk of Court shall **CLOSE** this case, and all other pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 18th day of May 2021.

 

 

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   Nolberto Lemus, *pro se*
      All counsel of record

---

[8] Although we've already denied the Petitioner's preemptive motion for a COA, *see* Paperless Order [ECF No. 21], the Court must still "issue or deny a certificate of appealability when it enters a final order adverse to the applicant," Rule 11(a) to the Rules Governing Section 2254 Cases in the United States District Courts.